May it please the Court, my name is Rachel Steinholt and I represent Ms. Schaefer. We are asking this Court to reverse the District Court's order denying the motion to suppress evidence and poisonous fruits obtained from an illegal search. On May 19, 2020, law enforcement searched Ms. Schaefer's person and later her home and they did not have reasonable suspicion to search either. First, information that initiated the investigation had gone stale. Second, law enforcement's follow-up investigation indicated the informant's claims were no longer reliable. Third, law enforcement drew conclusory hunches when equally plausible alternatives existed. And For these reasons, there was no reasonable suspicion to support the search and reversals required. Starting with the stale information, the last alleged drug sales between Ms. Schaefer and the informant happened between two and a half to three months prior to the search. Between those months, we don't really have anything adding value to the investigation. That distinguishes this case from the cases cited in the briefing where there's more. In those cases, we have controlled buys that are present or we have the timelines between the stale information and the search are much shorter. Or there was just simply more concrete information of ongoing drug activities in those cases. Here, as the investigation develops, the case against Ms. Schaefer actually weakens, which leads me to my second point. That the informant's claims later became uncorroborated. So the informant's main valuable information was that there was this drug source in Iowa, that Ms. Schaefer was obtaining drugs from a source in Iowa. So this... I mean, there was additional... I mean, refresh my recollection here. I mean, they were monitoring phone conversations. Yes. She was, as I understand it, unemployed and visiting casinos. I mean, there was more than just... Certainly the Sioux City source was part of it. But wasn't there sort of an ongoing investigation with several red flags that were coming up during the course of the investigation? And my recollection on the staleness issue is that the phone monitoring ended only a couple of days before the search. Is that correct? There's a lot to parse out with that question. So I'll start with your last point, which was the... It did. The phone search is from... It's about... It's almost 45 days and it ends on May 15th. And the point of the phone search is that it tracks her location and it tracks the incoming and outgoing calls. It does not track the content of any of these phone calls. So to their point that there was... She was communicating with known individuals involved with drugs. We don't know the content of any of those conversations. But there were... The numbers were associated with known drug dealers or drug users. Is that right? That is the information that we have, which is not enough in our view. You know, to the point about that source... So I do want to clarify that Iowa's source was never located. And law enforcement interpreted that as that... That must mean that she has a local source. So we have this false dichotomy that's set up where any of the avenues seem to point to Ms. Schaffer's a drug dealer. And that's problematic. I think that is illustrative of this poisonous lens through which this investigation filters through. Back to some of these... These conclusory hunches that you know... So she goes to casinos. Okay. So they have her at casinos. And they kind of just stop at that hunch. What they could have done is they could have pulled surveillance tapes. They could have placed an undercover agent in the casino to see what was actually happening at the casino. They just stop at she goes to casinos. And I think it is important to note, you know, this is a potentially free activity for her. They don't even know she's gambling in there. So maybe even if she is The point is, though, is that what the law enforcement does is they just... They only get us so far. And that's not far enough. So this also driving around town. That's another point that law enforcement makes. That she doesn't have a job, yet she's able to drive around town. Well, nothing comes from this. They don't have any controlled buys. They have some movements that are being monitored. So all we have is that she's driving around. When you add all... How do you factor that in with what I understand to be the initial texts between your client and the source of information? Those seem to be... I think that the law enforcement was fairly confident those were drug-related texts. Is that fair? Yep. That's what law enforcement testified to at the suppression hearing. And so if you've got that at the beginning of the investigation and that the nature of drug trafficking is sort of... It's ongoing. It's not necessarily a discrete act. Does that make your case a little different just because of the nature of drug trafficking and its extended period of time over which it takes place? To answer that, I would point to those stale cases that we referenced in the briefing and the distinguishable features here. So we do have... That's how this investigation gets started, right? So we do have those informant text messages that indicate potential drug trafficking. And that's not when the search commences. The search commences nearly two and a half to three months later. And during that time, we would argue that the case actually gets weakened because this informant, which initiated this case, this is how this all gets started, that information... His credibility diminishes over these three months because his most important piece of information, which is this alleged source in Iowa, is completely unfounded. I mean, they tracked her incoming and outgoing calls. There's not even a call made to any Iowa phone number. No incoming calls from any Iowa phone number. She never visits Iowa. And keep in mind, this informant was also on probation. This person has his own criminal history that's extensive. There's motivation to lie for this individual as well. So your position is, as I understand it, is that reasonable suspicion or probable... Any kind of suspicion of drug trafficking lessened after the initial review of those texts. What if, given the same period of time, you have those initial texts, but it just stayed neutral? The suspicion didn't lessen, but it didn't increase. Would that be sufficient, given the nature of drug trafficking, to go ahead and search at the time that they did? That would be more persuasive, but that's not what we have here. That would be a more stronger case. But in this case, we have a weakened case over time, and their investigation did not lead to really more tangible evidence that there was ongoing activity occurring. And I do think it is important to note that this is a totality of the circumstances analysis. There were positive things in favor of Ms. Schaefer as well. During this time, she's also meeting her probation officer every single time that there's a meeting. She doesn't miss one. She also doesn't have any failed drug tests during this time. The totality of the circumstances require us to consider positive characteristics as well. And I get to your point about positive characteristics, but in this particular analysis, is there a meaningful difference between simply positive characteristics and factors that would indicate that that's not the conduct she's engaging in? In other words, she's got a job that she's working 10 hours a day, 6 days a week, or she has other obligations for family members that just don't give her the opportunity to do that. Is that a distinction that matters here? Yes, it is because we do have to consider the totality. Here, we look at everything that the officers brought to us, and everything that they have, cuts, could also be interpreted pretty innocently, what they bring us. We're supposed to consider both options. Here, these potential positive characteristics, maybe they don't explain the whole story. It doesn't explain away potential poor conduct on her part. It does add to the overall equation and it should be considered. I do want to pivot briefly to the day of the search and how that does not bolster reasonable suspicion. In order to do so, I do want to have this backdrop of the Jones case that we cite in our briefing. That just nervousness as a basis for reasonable suspicion, that case tells us that because the government repeatedly relies on nervousness for a basis of reasonable suspicion, that we should treat that with caution. On the day of the search, they do cite several instances that they say, hey, this shows she's nervous, therefore, she must be a drug dealer. We would argue that nervousness would be appropriate in these circumstances. She knows she's being followed by police. She's on probation. She's told she isn't free to leave when she arrives at that gas station. Then there are more officers that arrive on the scene, which again, the Jones case says that certain behavior that seems suspicious should be less suspect because somebody would be. Their nervousness would be accentuated when multiple officers show up on the scene. In summary, the day of the search doesn't really bolster anything, doesn't bolster the finding of reasonable suspicion. I do see that I would like to reserve the remainder of my time for rebuttal. Thanks. You may. Thank you. May it please the Court, Ms. Dean-Holt. My name is Paige Peterson, and I'm a Special Assistant United States Attorney here representing the United States on this case. And we are asking that the Court affirm in all respects the District Court's order denying suppression in this case. Now, present here today, we essentially have two main issues that need to be addressed. And number one is whether or not reasonable suspicion of criminal activity existed to allow a warrantless search and seizure of Schaefer's residence and her person on the day of May 19, 2020. And also whether or not that information obtained by law enforcement while actively investigating this case had gone stale by the time that search was conducted. Now in regards to that first issue of the reasonable suspicion, it's very important to be clear here today that Ms. Schaefer was on active parole at the time that that search was conducted. And the terms of her parole are undisputed here today. She was subject to search of her person, place, property, personal effects, and vehicle with or without a warrant at any time by either law enforcement or her parole officer when reasonable suspicion of criminal activity was suspected. So then the question remains is what reasonable suspicion was present to authorize this search? And as the Eighth Circuit has made very clear, that reasonable suspicion exists when considering the totality of the circumstances. Specifically at the time that the search is conducted. Not at the time the search is decided to be conducted, but it's clear within the Eighth Circuit that the time that search begins. And in addition, that reasonable suspicion must be more than just a hunch, but only requires that police articulate some minimal objective justification. Is it accurate that the parole officer, when first presented with the information from the law enforcement, didn't think that this was, wasn't going to act on it? When she got the information from the, I'll say the informant or the person who provided the information. And then it seems like after that there's really no substantive information about drug trafficking. Am I, is that an accurate description? Yes. If we look to the suppression hearing transcript, we do see that the parole officer agrees that she was not going to have her search performed once she, the first time that she was presented with this information. These text messages, these conversations between that source of information and Ms. Schaefer that the agent brought to her. And that's really the only thing that the law enforcement gathered that actually is, I'm using the word substantive because I don't know what other type of word to use to sort of identify criminal activity. Initially, we have that. However, I would argue that that reasonable suspicion, the layers keep being added as we bring in the PRTT and the ping warrants here, as well as Ms. Schaefer's actions on the day of the search. However, is there any additional criminal activity though that is sort of suspected? I understand what you're saying. You're monitoring her whereabouts and these seem to be suspicious to law, according to law enforcement. But there's no other criminal activity that can be identified. Is that accurate? I would say not beyond a reasonable doubt or maybe even with probable cause of it when we have that tracking of the warrants and looking through it. However, again, it's the reasonable suspicion standard here of that criminal activity still taking place and still being active that the government argues is still mounting as this investigation is ongoing. Did the probation officer say why there wasn't going to be a search after the initial information? It's a little unclear in her testimony. However, I would turn then to the agent's testimony in that hearing transcript where he does a fairly well job of articulating why jumping right onto a search of Ms. Schaefer after we gather this information isn't necessarily the best means to go forward in investigating narcotics-type cases. As we know, narcotics detectives, when they're conducting these investigations, their main goal is to find that other source. The person that's sourcing Ms. Heather Schaefer is the one with the greater amount of that methamphetamine and is truly the bigger threat within the investigation. Going straight to a search of Schaefer after we find this initial reasonable suspicion that she's selling methamphetamine would completely jeopardize being able to find who her source is in his case. It would essentially end his investigation right there. We wouldn't find out who is sending these narcotics to the Yankton community and who Ms. Schaefer is getting it from. That's, I think, really important to also note, too, is that the agent's investigation here wasn't motivated by nailing it on Schaefer because she's a known drug distributor within the community because of her history. His main motivation was to find her source through these PIN warrants and these PRTT warrants that he had for that 45-day stint. And I understand that, and that was the testimony of the nature of a drug investigation. But here we're here for Ms. Schaefer. So maybe if the overarching goal for the law enforcement is the investigation itself, then maybe just one of the costs of that is they let the information about an individual participant, potential participant, run stale. That's sort of just one of the risks that, or not risks, but one of the downsides of the nature of the investigation and what they were really going after? That could be, yes. And I think there's some good explanation by the agent presented in the testimony as well about that. Not specific to staleness, but specific to the nature of the investigation is that, you know, it's not uncommon throughout a narcotics investigation, especially in a conspiracy to distribute, that they up those 45-day warrants once again to keep going because they still want to go for that source and find out if Ms. Schaefer is returning back to Sioux City, Iowa, specifically in this case, to make, I guess what, I don't love the term, but what he describes as a, quote, suicide run to go to Sioux City, up her source again of her product, that methamphetamine, and then make that trip back. Yeah, and then in this case, I guess my point is that he didn't get that. And maybe that's just one of the costs of, you know, doing business of investigating these kinds of offenses. You let it go stale. You didn't get anything else. You just keep investigating, but you can't go on that. You had to make a judgment call. You didn't move in at that time. It went stale. Now you start over. I mean, why shouldn't that be the requirement? Or at least, you know, sort of, at least when we're looking at an individual defendant's rights and protections from a search of her home. I do agree that that risk is run in a narcotics investigation, that in conspiracies. I would point to United States v. Jones, which does really, kind of talks about the staleness and especially when you have conspiracy type cases in there. I believe they had about a dozen actions that took place starting the investigation, that seven-month period. And that gives the court some guidance on how we deal with the staleness when we have these sort of situations of the ongoing investigation. Now, here specifically, I will agree that we don't have any actions of Ms. Schaefer going to Sioux City, Iowa or having those contacts with that phone. I would note one clarification. Paying those warrants don't just collect phone calls that are being made. It also collects text messages that are going in and out between phones. Again, no content. But I think it's important to note because we know that Ms. Schaefer was engaging in texting conversations with the original source of information. So when the agents are receiving this information, they're not just receiving calls coming in and out, who she's calling, but also it's who she's texting. So I wanted to make that clarification before moving forward. However, again, we have more layers of reasonable suspicion adding throughout that 45-day time. Ms. Schaefer is not only being surveillanced through the tracking of her cell phone and the numbers who she's associating with, which law enforcement again testifies to that they know have been involved with or are currently involved with illegal drugs. They note specifically the name of a person who she has seen through physical surveillance at the home of who they know is also involved in drug trafficking. In addition to that, she's driving at all hours of the day and night with really no, I guess, any sort of employment that she has to be able to fund even the gas money to be partaking in those activities. And in addition, she's also... Was she not required to have employment by the terms of her parole? Usually that is a term of parole, Your Honor. I could not state specifically if that's a Government Suppression Hearing Exhibit 1 that would have those terms in there. All I could state specifically is that Condition No. 5 is about the searches and seizures based on reasonable suspicion. But in addition to that, though, we have Ms. Schaefer frequenting these casinos. And I know that the appellant makes this argument that maybe she won big there and just had some money on her. But again, we turn back to the totality of the circumstances and then we also look to Ms. Schaefer's history that this agent in particular, again, who's a narcotics detective with the Division of Criminal Investigation, knows this community and knows Schaefer's history. He knows that in prior investigation, she has conducted a sale in the parking lot essentially of what is considered a casino slash bar type of situation. He has reviewed the cell phone extraction from that source of information, sees references to sales at a specific casino in Yankton. And then also we have the mention, again, of the Hard Rock Casino and Hotel as well where it appears that Ms. Schaefer is attempting to make a sale of methamphetamine to that source at that time. So again, we always reflect back to that totality of the circumstances here. And that's the goal when we're reviewing everything within that 45-day stint is what is that showing us specifically. And it's not necessarily showing us that Ms. Schaefer is traveling back to Sioux City to up her source again or up her product to come back to sell. But it is showing that she's still having those continued communications with people known to be involved in drug trafficking and known drug users in the community. And that's really the most important, I believe, fact to keep in mind when we're looking at the reasonable suspicion mounting, but then also at the staleness argument as well. And then I would have turned then to the still mounting reasonable suspicion that comes on the day of the search, that May 19th date. And I mean, the observations by the specific detective in this case who testified about it really began the moment he's seeing Ms. Schaefer at a gas station, evading this detective, taking an essentially not a direct route to another gas station on the other side of town, begins lighting a cigarette, acting in what he describes as a nervous behavior, overfilling her gas tank while having that lit cigarette in her hand, and is overall acting very nervous around law enforcement. That detective testifies to that, as well as Ms. Schaefer's parole officer, which I think is important considering her parole officer, Officer Novak, is the one most familiar with Schaefer and could determine that she's acting different than times before where she's met with Officer Novak in the past. That nervousness behavior does become apparent to both of them, as well as the actions that she's displaying on that day in question. And because of the mounting reasonable suspicion again on the 19th, Ms. Schaefer is again in one gas station to another, the evasion of law enforcement, that continued nervous behavior that is described by both Officer Novak and the detective in this case, again just mounts more reasonable suspicion against Ms. Schaefer. I know that argument had been previously briefed on about, well, it can't be added to the reasonable suspicion for the search because the search had already decided to be conducted in a briefing with law enforcement beforehand, and that's correct. However, the Eighth Circuit has made that bright-line rule, it's made clear, that reasonable suspicion attaches at the time the search is conducted. So all of those observations made about Schaefer at that Casey's gas station mount towards the reasonable suspicion against her at the time the search is conducted. And then, of course, we have the last question, which is then that staleness. And again, I would submit most of the same factual arguments that I submitted to this Court about the reasonable suspicion mounting, but I think the crux of that is that it's been made very clear in case law within the Eighth Circuit, is that the passage of time between the transactions and the ensuing search is less significant when the facts recited indicate activity of a continuous nature. The very charge here that Ms. Schaefer was charged with in this case and convicted of is of a continuous nature. It's a conspiracy to distribute. At the time within the state world, it was a distribution investigation, but we do know that when we get up to the federal world, we have that conspiracy attachment along with it. So clearly a case of something of a continuous nature. We have law enforcement observing Schaefer continuing to have contact with those known to be involved with illegal drugs. Her text messages from late February where she's actively selling methamphetamine to that source. She was frequenting these casinos that law enforcement knows in the past that she's conducted these sales before. Does the record show when they talk about contacts by phone or physical with people known to be involved with drugs, that's sort of a broad statement. Is it people who are known to be selling drugs or using drugs? The specific language is that known to be involved in illegal drugs is ongoing, the language that is used by the agent. The time specifically where he references someone known to be a drug trafficker is when he mentions the name of the residence of a person that Ms. Schaefer, through physical surveillance, is seen at. So that's the real, that's the specific mention of the drug trafficking that we see there. However, the rest is just involved in illegal drugs. And I say that my time is up. So thank you so much. Thank you. So I want to start with Judge Kelly's question about this price to pay for, in essence, going for this larger fish. And I, it's a great question because it's, it cuts both ways in terms of, you know, their, it justifies their, a lot of their reasons and then yet they hide behind why they don't have to take the investigation further because they don't want to compromise trying to get this bigger fish. And by going after this bigger fish, there are instances where you find that your original case weakens. It dissipates. You find out more information. It's not helpful. It's not concrete. It doesn't add anything. Here we have, we don't have evidence of anything being ongoing at this point. We have these text messages with the informant in February. That informant's arrested. He's detained. He's in jail. Ongoing nature doesn't seem to be present. But for these, what we would argue are not objective or particular points that are enough to meet the reasonable suspicion standard. So to that point of the, it's not objective enough. We have this officer, I point to that false psychotomy point that I already made, which is that we have this officer investigating this case that's very familiar with, with Ms. Schaefer and under any, you know, under any of his options, drug source in Iowa, nope, must mean it's a local source in Sioux City. There's just nothing in his mind where he's entertaining the possibility that she's not a drug dealer. So I don't, I think objectiveness is compromised here. I also think we don't have particularity enough. So she drives around. Okay. She drives around. She doesn't have a job. You asked, Judge Kelley, you asked the question about whether or not having employment is part of her condition. She has, her condition number 11 was that she would take advantage of opportunities offered by supervision to secure employment. That doesn't mean she's required to have it. So, again, back to this particular point, particularity. So she drives around. Okay. So she goes to casinos. All right. You know, she talks with people. You know, one of which was her, her brother. That comes out at the suppression hearing, that, you know, her brother's one of these people that they identify. So are those, we don't know the content of these conversations. So are those drug conversations? Are those talking about mom? You know, so we just don't have evidence here of this being continuous. And that's what's required for reasonable suspicion. The information had gone to steal. The follow-up investigation indicated that, you know, the informant's information wasn't as reliable as they originally thought, so the case got weakened. Law enforcement was frustrated, and nothing on the day of the search really added anything to this inquiry. So for those reasons, we asked that this court reverse the district court's order and remand for further proceedings.